# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| FRANCISCO CABASSA,<br>    *Plaintiff*,<br><br>    v.<br><br>JOHN OSTHEIMER, *et. al.*,<br>    *Defendants*. | No. 3:16-cv-175 (JAM) |

## RULING GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff Francisco Cabassa is a prisoner in the custody of the Connecticut Department of Correction (DOC). One day he broke his ankle while playing basketball, and he believes that numerous DOC officials thereafter neglected his medical needs. He has commenced this *pro se* action against defendants Nurse John Ostheimer, Nurse Cindy Letavec, Sharon Brown, Warden Scott Erfe, former DOC Commissioner Scott Semple, and Dr. Carson Wright. For the reasons that follow, I will grant defendants' unopposed motion for summary judgment.

### BACKGROUND

On the morning of September 19, 2015, plaintiff injured his ankle during a basketball game while he was incarcerated at Cheshire Correctional Institution. Plaintiff's ankle was discolored, slightly swollen, and warm to the touch. Plaintiff was treated in the medical unit at 9:00 a.m. Defendant Ostheimer contacted defendant Wright, the on-call doctor, who ordered rest, ice, compression, and elevation; Motrin three times per day for seven days; crutches; an Ace wrap; and a bottom bunk pass for the bottom tier for seven days

Plaintiff states that, although he was immediately brought to the medical unit, he was left in the waiting area until 12:45 p.m., at which time Ostheimer told him how his injury would be treated without examining him. Medical records show that 200 mg Motrin was issued to plaintiff

on September 19, 2015 only. Although 800 mg Motrin was prescribed for pain management, plaintiff claims that he did not receive this medication. Plaintiff also states that he never received the Ace bandage.

Medical records indicate that, on September 21, 2015, plaintiff returned the crutches, stating that he was able to bear weight on his ankle. Plaintiff complained the next day of pain and was taken to the University of Connecticut Health Center. X-rays taken on September 22, 2015, showed a fracture, and a fiberglass cast was applied.

Plaintiff was seen in the facility medical unit on September 24, 26, 27 and 29, 2015. He returned to the University of Connecticut Health Center for a follow-up visit on October 9, 2015. X-rays taken at that time showed that the ankle was healing. No acute fractures were identified.

Plaintiff did not properly file any inmate grievances from September 1, 2015, until November 30, 2015. A grievance he submitted on October 13, 2015, was returned to him without disposition for failing to demonstrate that he first attempted to resolve the issue informally with staff. Rather than correcting the deficiency, plaintiff filed grievance appeals. The appeals were returned without disposition for failing to comply with procedures.

## DISCUSSION

The principles governing a motion for summary judgment are well established. Summary judgment may be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (*per curiam*). "A genuine dispute of material fact 'exists for summary judgment purposes where the evidence, viewed in the light most favorable to the nonmoving party, is such that a reasonable jury could decide in that party's

favor.'" *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013) (quoting *Guilbert v. Gardner*, 480 F.3d 140, 145 (2d Cir. 2007)). The evidence adduced at the summary judgment stage must be viewed in the light most favorable to the non-moving party and with all ambiguities and reasonable inferences drawn against the moving party. *See, e.g.*, *Tolan*, 134 S. Ct. at 1866; *Caronia v. Philip Morris USA, Inc.*, 715 F.3d 417, 427 (2d Cir. 2013). All in all, "a 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Tolan*, 134 S. Ct. at 1866 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

Plaintiff has not filed any objection or opposition to defendants' motion for summary judgment. In *Jackson v. Federal Express*, 766 F.3d 189 (2d Cir. 2014), the Second Circuit instructed that "when a party, whether *pro se* or counseled, fails to respond to an opponent's motion for summary judgment, a district court may not enter a default judgment," but "must examine the movant's statement of undisputed facts and the proffered record support and determine whether the movant is entitled to summary judgment." *Id.* at 197. Here, because plaintiff has filed a verified complaint, the Court will consider the allegations of plaintiff's complaint as akin to an affidavit submitted by plaintiff in opposition to summary judgment. *See, e.g., Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).

### *Deliberate Indifference to Serious Medical Need*

Plaintiff contends that defendants were deliberately indifferent to his serious medical need. It is well established that "[a] prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). A deliberate indifference claim has two elements. The first element is objective:

3

the alleged deprivation must be serious. The second requirement is subjective: the charged officials must act with a subjectively reckless state of mind in their denial of medical care. *See Spavone v. New York State Dept. of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013); *Hilton v. Wright*, 673 F.3d 120, 127 (2d Cir. 2012). If a plaintiff does not allege that a defendant acted purposefully or maliciously to harm him, then a plaintiff must at the least allege that a defendant has acted with deliberate indifference—that is, with awareness that plaintiff would suffer serious harm as a result of the defendant's actions or inactions. *See Salahuddin v. Goord*, 467 F.3d 262, 279–80 (2d Cir. 2006). By contrast, allegations of ordinary medical malpractice or negligence do not allege deliberate indifference of a constitutional magnitude and do not suffice to allege a cognizable claim for a violation of the Eighth Amendment. *Ibid.; see also Hill v. Curcione*, 657 F.3d 116, 123 (2d Cir. 2011).

Because plaintiff's ankle was eventually treated and there is no claim of ongoing injury, the focus of plaintiff's claim appears to be that his Eighth Amendment rights were violated because he was not treated more quickly for his ankle injury than he should have been. For example, he challenges the three-day delay in obtaining an x-ray and proper diagnosis and treatment for his fractured ankle. But other courts have rightly rejected this type of argument that a similar delay in treating a sports injury may be a sufficient predicate for an Eighth Amendment claim. *See Chatin v. Artuz*, 28 Fed. Appx. 9, 10 (2d Cir. 2001) (ankle injury from prison soccer game involving a "sprained ankle, a bone spur, and a neuroma, did not rise to the level of seriousness that the Eighth Amendment requires" and fact that "official waited two days before taking [plaintiff] to the hospital for x-rays" did not "rise[] to the level of deliberate indifference to [plaintiff's] serious medical needs"); *Patterson v. Westchester County*, 2014 WL 1407709, at

4

*7 (S.D.N.Y.) (ankle injury from basketball game not objectively serious enough and "the several-day delay in taking and reporting the results of an x-ray that revealed torn ankle ligaments does not constitute a sufficiently serious treatment delay"), *report and recommendation adopted*, 2014 WL 2759072 (S.D.NY. 2014).

As for plaintiff's claim that he did not receive adequate interim and pain relief, this contention is belied by the medical records showing that Dr. Wright prescribed pain medication, ice, rest, elevation, an Ace bandage, a bottom bunk and bottom tier pass, and crutches. Doc. #27 at 4, 55. The medication administration records show that defendant Ostheimer issued pain medication, two tablets of 200 mg Motrin, to plaintiff on September 19, 2015. *Id.* at 61. The medical records also show that plaintiff signed the medical incident report which stated that defendant Ostheimer provided him pain medication and other treatment for his injury on September 19, 2015. *Id.* at 56.

"When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Vega v. Rell*, 611 F. App'x 22, 25-26 (2d Cir. 2015) (quoting *Scott v. Harris,* 550 U.S. 372, 380 (2007) (internal quotation marks omitted). Here, the medical record shows that plaintiff received pain medication and treatment for his injury. Thus, any claim that he was provided no pain medication is contradicted by the record. Plaintiff's disagreement with the particulars of his treatment is no more than a disagreement akin to a claim of negligent medical malpractice that is not cognizable under the Eighth Amendment. Defendants' motion for summary judgment will be granted as to plaintiff's claim for deliberate indifference to his medical needs.

*Conditions-of-Confinement Claim Against Semple and Erfe*

Plaintiff's claim against defendants Semple and Erfe is based on their alleged failure in their supervisory/managerial capacity to have call buttons installed in the cells at Cheshire Correctional Institution, thereby preventing him from summoning medical assistance when he was in pain from his injury. The Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), requires inmates to exhaust their administrative remedies before filing an action in federal court concerning any aspect of prison life. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002). Here, although plaintiff initially attempted to file administrative complaints, defendants have persuasively demonstrated that plaintiff's complaints were procedurally deficient and that, despite being afforded an opportunity to correct these deficiencies, he did not so. *See* Doc. #26-1 at 11-13. Accordingly, the Court will grant summary judgment for Semple and Erfe for failure of plaintiff to exhaust administrative remedies.

*Conspiracy Claim*

Plaintiff also includes a generalized conspiracy claim in his complaint as follows: "Each defendant[']s acts and omissions constituted a manifestation of their mutual agreement and their documents they created are steps taken to advance." Doc. #1, ¶ 42. This conspiracy claim is too conclusory and without adequate support in the record to create a genuine issue of fact for trial. *See, e.g., Ciambriello v. County of Nassau*, 292 F.3d 307, 325 (2d Cir. 2002). Nor does plaintiff specify any law supporting his conspiracy claim. For example, if he relies on 42 U.S.C. § 1985(3), this provision prohibits conspiracies motivated by racial or otherwise class-based invidious discriminatory animus, *see Dolan v. Connolly*, 794 F.3d 290, 296 (2d Cir. 2015), but plaintiff does nothing to show such animus. Defendants' motion for summary judgment will be

granted as to the conspiracy claim.

## CONCLUSION

Defendants' motion for summary judgment (Doc. #26) is GRANTED. To the extent that the complaint alleges any claims under state law, the Court will decline to exercise federal jurisdiction in light of its dismissal of the federal law claims in this case. *See, e.g., Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 117–18 (2d Cir. 2013). The Clerk of Court shall enter judgment in favor of the defendants and close this case. It is so ordered.

Signed this 27th day of June 2017 at New Haven, Connecticut.

     *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge